## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE:** ) | **Chapter 11** |
| ) | |
| **ORION REFINING CORP.,** ) | |
| ) | |
| **Debtor.** ) | **Case No. 03-11483 (MFW)** |
| _____ ) | |
| **MICHAEL G. SYRACUSE d/b/a** ) | |
| **INTERSTATE SUPPLY COMPANY** ) | **Adv. Proc. No. 03-53939  (MFW)** |
| **AND TEXAS ICO, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ORION REFINING CORPORATION,** ) | **Rel. Docket Nos. 77, 78, 108 and 109** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## <u>NOTICE OF APPEAL</u>

Plaintiffs, Michael G. Syracuse d/b/a Interstate Supply Co., and Texas ICO, Inc., hereby give notice of their appeal from the Opinion & Order issued and entered on April 17, 2006 (Docket Nos. 77 and 78) in the above-referenced adversary proceeding granting the Debtor's Motion for Partial Summary Judgment on the issue of title (Docket No. 47) and denying the Motion for Partial Summary Judgment of the Plaintiffs, on the issue of title, (Docket No. 37) and, their appeal of the Court's Opinion and Order of August 8, 2006, (Docket Nos. 108 and 109) denying the Plaintiffs' Motion to Reconsider (Docket No. 81). This notice of appeal is given pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure 8001 and 8002.

The names of all parties to the judgment, order or decree appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

**Party:**

Appellants:  Michael G. Syracuse d/b/a
             Interstate Supply Company,
             And Texas ICO, Inc.

**Attorneys:**

Michael R. Lastowski, Esquire
Christopher M. Winter, Esquire
Duane Morris LLP
1100 N. Market Street, Suite 1200
Wilimington, DE  19801-1246
(302)657-4951

Andrew C. Wilson (#01162)
Thomas R. Blum (#03170)
Susan M. Caruso (#27195)
Simon, Peragine, Smith & Redfearn,LLP
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163-3000
(504)569-2030

-and-

Edward S. Rapier, Jr. (#17896)
2160 8th Street, Suite A
Mandeville, LA 70471
(504)831-3393

Appellee:  Orion Refining Corp. and
Cypress Associates, LLC
ORC Distribution Trust Representative

Richard D. Allen, Esquire
Gregory W. Werheiser, Esquire
Thomas W. Briggs, Jr., Esquire
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801
(302)658-9200

Dated:  August 17, 2006
       Wilmington, Delaware

 

Michael R. Lastowski (DE I.D. 3892)
Christopher M. Winter (DE I.D. 4163)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone:   302) 657-4900
Facsimile:   (302) 657-4901
E-mail:    mlastowski@duanemorris.com

-and-

Andrew C. Wilson (#01162)
Thomas R. Blum (#03170)
Susan M. Caruso (#27195)
Simon, Peragine, Smith & Redfearn, L.L.P.
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030

Edward S. Rapier, Jr. (#17896)
2160 8th Street, Suite A
Mandeville, LA 70471
Telephone: (985)626-1011
Facsimile: (905)674-9082


*Attorneys for Michael G. Syracuse d/b/a Interstate Supply Company, and Texas ICO, INC.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ORION REFINING CORP., | ) | Case Nos. 03-11483 (MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MICHAEL G. SYRACUSE d/b/a | ) | |
| INTERSTATE SUPPLY CO., and | ) | |
| TEXAS ICO, INC., | ) | |
| | ) | Adv. Proc. No. 03-53939 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORION REFINING CORP. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER

**AND NOW**, this **8th** day of **AUGUST, 2006**, upon consideration of the Motion for Reconsideration filed by Michael G. Syracuse, and the Debtor's response thereto, and after oral argument, it is hereby

**ORDERED** that the Motion for Reconsideration filed by Michael G. Syracuse is **DENIED**.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Christopher M. Winter, Esquire[1]

_____

[1] Counsel shall serve a copy of this Opinion and Order on all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

Christopher M. Winter, Esquire
Michael R. Lastowski, Esquire
Duane Morris LLP
1100 N. Market Street
Wilmington, DE 19801-1246
Counsel for Michael Syracuse

Andrew C. Wilson, Esquire
Thomas R. Blum, Esquire
Susan M. Caruso
Simon, Peragine, Smith & Redfearn, LLP
1100 Poydras Street, 30th Floor
New Orleans, LA 70163-3000
Counsel for Michael Syracuse

Edward S. Rapier, Jr., Esquire
2160 Eighth Street, Suite A
Mandeville, LA 70471
Counsel for Michael Syracuse

Richard D. Allen, Esquire
Gregory W. Werkheiser, Esquire
Thomas W. Briggs, Jr., Esquire
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801
Counsel for Cypress Associates, LLC,
ORC Distribution Trust Representative

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ORION REFINING CORP., | ) | Case No. 03-11483 (MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MICHAEL G. SYRACUSE d/b/a | ) | |
| INTERSTATE SUPPLY CO., and | ) | |
| TEXAS ICO, INC., | ) | |
| | ) | Adv. Proc. No. 03-53939 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORION REFINING CORP. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>[1]

Before the Court is the Motion of Michael G. Syracuse ("Syracuse") for Reconsideration of the Court's April 17, 2006, ruling that he did not have title to certain moveable property (the "Surplus Materials") located at the Norco, Louisiana, facility of Orion Refining Corporation (the "Debtor"), which became property of the Debtor's estate as of the petition date. For the reasons stated herein, the Court will deny the Motion.

I.   <u>BACKGROUND</u>

The factual background of this case is recited in the Court's Memorandum Opinion dated April 17, 2006, and will not be

---

[1]   This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

repeated here.  <u>Syracuse v. Orion Ref. Corp. (In re Orion Ref.</u>
<u>Corp.)</u>, 341 B.R. 470 (Bankr. D. Del. 2006).  On April 27, 2006,
Syracuse filed his Motion for Reconsideration.  Oral argument on
the Motion was initially heard on June 6, 2006, at which time the
Court granted the Motion in part and directed that proceeds from
the sale of the Surplus Materials remain in escrow until a <u>final</u>
decision on the merits is rendered.[2]  The Court continued the
hearing to June 28, 2006, to consider the remainder of the
arguments raised by the Motion for Reconsideration.  At the oral
argument held on that date, the Court granted the parties'
request for additional briefing.  Post-argument briefs were filed
on July 11 and 21, 2006.  The matter is now ripe for decision.

---

[2]  At the time of the sale of the Debtor's assets to Valero
Energy Corporation and Valero Refining-New Orleans, LLC
(collectively "Valero"), the parties had stipulated to the escrow
of $1.5 million in sale proceeds related to the Surplus
Materials.  That Stipulation provided that the funds would not be
released until:
> [A] determination by a <u>final</u> order of this Court . . .
> that (i) [Syracuse] owned some or all of the Surplus
> Materials at the time of the Sale and some or all of
> the Surplus Materials did not become property of the
> Debtor's bankruptcy estate pursuant to section 541 of
> the Bankruptcy Code upon the commencement of the
> Debtor's bankruptcy case; . . . then [Syracuse's]
> ownership Interest in such Surplus Materials shall be
> deemed to have attached to the Escrow Amount . . . .
(Docket No. 336, ¶ 57, in Case No. 03-11483) (emphasis added).

-2-

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (N), & (O).

III. <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

A motion for reconsideration is not specifically addressed in the Federal Rules of Civil Procedure; rather, such motions generally fall within the parameters of Rule 59(e), which allows a party to file a motion to alter or amend a judgment.  Fed. R. Bankr. P. 9023; 12 <u>Moore's Federal Practice - Civil</u> § 59.30[2][a] (3d ed. 2005) ("[A] Rule 59(e) motion involves the reconsideration of matters properly encompassed in a decision on the merits.").

A motion for reconsideration is an extraordinary means of relief in which the movant must do more than simply reargue the facts or law of the case.  <u>See</u> <u>North River Ins. Co v. Cigna Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995) (concluding that motion to alter or amend judgment "must rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice'.") (citations omitted); <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 908 (3d Cir. 1985) ("The purpose of a motion for

-3-

reconsideration is to correct manifest errors of law or fact or
to present newly discovered evidence."); Stanziale v. Nachtomi,
No. 01-403, 2004 WL 1812705, at *2-3 (D. Del. Aug. 6, 2004)
(stating that a court may grant a motion for reconsideration "if
it appears that the court has patently misunderstood a party, has
made a decision outside the adversarial issues presented by the
parties, or has made an error not of reasoning, but of
apprehension."); Dentsply Int'l, Inc. v. Kerr Mfg. Co., 42 F.
Supp. 2d 385, 417 (D. Del. 1999) ("[motions for re-argument]
should be granted sparingly and should not be used to rehash
arguments already briefed or allow a 'never-ending' polemic
between the litigants and the Court").

    B.   <u>Grounds for Reconsideration</u>

In his Motion, Syracuse argues that the Court misapprehended
the issue that the parties submitted to the Court for decision,
that the Court made decisions outside the adversarial issues
presented by the parties, and that the Court made clear errors of
law.

    1.   <u>Misapprehension of the Issue</u>

Syracuse contends that the Court addressed the wrong issue,
as indicated by the Court's statement that title to the Surplus
Materials had passed to the purchaser of the Debtor's Norco
facility, Valero Energy Corporation and Valero Refining-New
Orleans, LLC (collectively "Valero").  Syracuse agrees that

Valero currently has title to the Surplus Materials, but states that the proper issue was whether Syracuse "owned some or all of the Surplus Materials at the time of the Sale and [whether] some or all of the Surplus Materials did not become property of the Debtor's bankruptcy estate."

Syracuse is incorrect. In the Opinion, the Court correctly identified the issue as follows:

> Syracuse argues that the Agreement was a contract of sale. Consequently, he asserts that title to the surplus materials passed to him at the time of execution. As a result, he contends that the items were not property of the Debtor's bankruptcy estate and could not be sold to Valero.
> The Debtor argues that the Agreement was for services. Consequently, the Debtor contends that it retained title to surplus materials that were not timely removed by Syracuse.

341 B.R. at 473-74. The Court resolved that issue as follows:

> The Court concludes that Syracuse's performance of his clean-up services was a suspensive condition to his obtaining title to the surplus materials in the designated areas. Rowley Co., 350 So. 2d at 192-93. Until Syracuse removed an item from a designated area and cleaned that area, title to that item did not pass from the Debtor to Syracuse. Consequently, the Court finds that title to the items remaining at the Debtor's facility had not passed to Syracuse at the time of the Debtor's bankruptcy filing.

Id. at 474.

Therefore, the Court did not misapprehend the issue presented by the parties, but did in fact address and decide the very issue the parties identified: did title to the property pass to Syracuse before the Debtor filed its bankruptcy petition.

-5-

2.    Making Decisions Outside the Adversarial
                Issues Presented

In his Motion, Syracuse argues that the Court erred in determining that his contract with the Debtor was a sale subject to a suspensive condition inasmuch as the contract did not contain the term "suspensive condition" and the Debtor had not raised that classification as a defense.  Moreover, Syracuse contends that neither he nor the Debtor intended a suspensive condition to apply to the contract, and if there was any ambiguity, it should have been construed against the Debtor.

Syracuse argued that the parties' contract was one of sale; the Debtor argued that it was one for services.  Id. at 473-74.  Contrary to Syracuse's assertion, the Court did not conclude in its Opinion that the contract was a sale contract.  Instead, the Court found that it was unnecessary to classify the parties' contract as one of sale or one for services, "because even if classified as a contract of sale, it was a contract subject to a suspensive condition that – until fulfilled – prevented title to the surplus materials from passing to Syracuse."  Id. at 474.

Because the parties' contract is governed by civilian principles, the classification of the contract is determined by reference to the Civil Code.[3]  In classifying a contract in the

---

[3]  La. Civ. Code art. 1916 ("Nominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title [conventional obligations or contracts].").

-6-

absence of a controlling Civil Code article, "the process is a creative one, since the judge ultimately has the power to accept or reject the analogies, or chose between them."  Clarence J. Morrow, <u>Louisiana Blueprint: Civilian Codification and Legal Method for State and Nation</u>, 17 Tul. L. Rev. 351, 553-54 (1943).

No controlling Civil Code title exists that specifically classifies a conventional obligation that calls for <u>both</u> a sale of a moveable and a performance of a service when the sale and the service are both integral to the fulfillment of the object of the contract.  Consequently, the Court followed the lead of the Louisiana Fourth Circuit Court of Appeals in <u>Jefferson Parish School Bd. v. Rowley Co.</u>, 350 So. 2d 187, 192-93 (La. Ct. App. 1977), which held that when a contract calls for both a sale and an act of performance, the performance is a suspensive condition to the act of sale.  341 B.R. at 474.

Because the parties put at issue what the contract was (one of sale or one for services), it was proper for the Court to determine, after considering Louisiana law, what the effect would be if the contract was a sale contract.  Consequently, the Court finds no reason to reconsider its decision on this point.

3.   <u>Clear Error of Law</u>

a.   <u>Suspensive Condition to Sale of Movables</u>

Syracuse argues that the Court made a clear error of law because it is a legal impossibility to have a suspensive

–7–

condition to the sale of a moveable.  This argument is without merit.

It is true that, in principle, Louisiana does not recognize the common law doctrine of conditional sales of moveables. Barber Asphalt Paving Co. v. St. Louis Cypress Co., 46 So. 193, 196 (La. 1908) ("[T]o suppose a sale without a transfer of the property in the thing which forms the object of the sale is simply to suppose an impossibility.").

Nonetheless, Louisiana law does recognize that title to moveables does not always pass at the time of contract.[4]  In particular, Louisiana law recognizes a sale of moveables subject to a suspensive condition – which postpones the transfer of title.  Barber Asphalt Paving, 46 So. at 197 ("The reason why a sale under a suspensive condition does not transfer the ownership is that it is not a sale. . . .  When a sale is made under a suspensive condition, there is no sale until the condition has been fulfilled."); Rowley, 350 So. 2d at 192-93 (holding that the

---

[4]  For example, when goods in stock are sold, title does not pass until the particular items of stock are individualized.  La. Civ. Code art. 2547.  Similarly, when moveables are sold by weight, tale, or measure, ownership does not pass until the seller, with the buyer's consent, weighs, counts, or measures the things.  La. Civ. Code art. 2458.  In Syracuse's post-hearing brief, he suggests that title passes at the execution of a contract despite the existence of a condition that would otherwise postpone the transfer of title.  The case cited by Syracuse for that proposition, however, interpreted a prior version of article 2458.  See Louisiana State Rice Milling Co. v. McCowan, 156 So. 213, 214 (La. 1934).

sale of uninstalled cabinets – moveables – was subject to a suspensive condition).

Therefore, the Court concludes that there was no clear error of law in its conclusion that, even if the contract was a sale, it was subject to a suspensive condition.

b.    Implied Suspensive Condition

In his post-argument brief, Syracuse argues that the Court's conclusion was erroneous because there is no mention of the term "suspensive condition" in the parties' contract.  This is not necessary, however, when that is the effect of the contract's classification under the Civil Code.  The contract at issue in Rowley did not contain the term either, yet the Rowley Court concluded that the sale at issue was subject to a suspensive condition.  350 So. 2d at 189-92.

The cases cited by Syracuse are not to the contrary, but merely stand for the unremarkable proposition that courts must look to the contract as a whole to determine if a suspensive condition exists.  See Southern States Masonry, Inc. v. J.A. Jones Constr. Co., 507 So. 2d 198, 201-02 (La. 1987) (holding that a "pay when paid" clause in a contract between a general and a subcontractor would not be construed as a suspensive condition when the parties did not contemplate that the subcontractor would be the insurer of the owner's solvency); Schexnayder v. Capital Riverside Acres, Inc., 129 So. 139, 143 (La. 1930) (declining to

-9-

construe a stipulation to a contract as a condition precedent when the language of the contract did not compel that result); Hampton v. Hampton, Inc., 713 So. 2d 1185, 1190-91 (La. Ct. App. 1998) (inferring the existence of a suspensive condition after reading the contract as a whole); Tilley v. Lowery, 511 So. 2d 1245, 1247 (La. Ct. App. 1987) (holding that an affirmative predial servitude of use was created by the parties' agreement and that the identification of its exact location was not a suspensive condition that delayed the creation of the servitude).

Syracuse also argues that the Court's ruling on this point is in error because the parties never intended the result reached by the Court. This also is not necessary. See, e.g., Thomas v. Philip Werlein Ltd., 158 So. 635, 637 (La. 1935) ("Where all the essential elements and conditions for an absolute sale are present in a contract between parties, the effects flowing legally from that particular contract follow, whether the parties foresaw and intended them or not, and though they may refer to the contract as an agreement to sell or as a conditional sale.").

In his post-argument brief, Syracuse fails to distinguish the law on which the Court relied.[5] Therefore, the Court will not reconsider its conclusion (that even if the parties' contract was a sale, it was a sale subject to a suspensive condition)

---

[5] It was on this issue specifically that Syracuse asked permission to submit a brief.

-10-

because it is well-founded in Louisiana law.

c.    Removal as Suspensive Condition

In his post-argument brief, Syracuse also argues that in its Opinion the Court found that the suspensive condition to the contract was the requirement that Syracuse clean the designated areas.  Syracuse asserts that at oral argument the Court, for the first time, suggested that the suspensive condition was the removal of the equipment.

This is inaccurate.  In the Opinion, the Court expressly found that "[t]he Agreement, however, also required [Syracuse] to remove the materials and clean those areas. . . .  Until Syracuse removed an item from a designated area and cleaned that area, title to that item did not pass from the Debtor to Syracuse." 341 B.R. at 474.

d.    Retroactive Fulfillment of Suspensive
      Condition

Syracuse asserts that the Court also erred by not addressing Syracuse's argument that it was legally deemed to have obtained title to the Surplus Materials before the Debtor's bankruptcy filing based on the Debtor's alleged bad acts.  He argues that under Louisiana law his title would be retroactive to the date of the Debtor's bad acts, which was before the Debtor's bankruptcy filing.  See La. Civ. Code art. 1772 ("A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.").

-11-

In fact, the Court did address this issue in its Opinion and concluded that, as a matter of law, Syracuse could not establish title to the Surplus Materials even if he succeeded in proving that the Debtor interfered with his performance.  341 B.R. at 475-76.  That ruling was premised on Louisiana law which protects the intervening rights of third parties.  <u>Id.</u> at 475 (stating that article 1775 of the Louisiana Civil Code "protects 'the rights of third persons against retroactive effects of the fulfillment of a condition'.") citing <u>Wampler v. Wampler</u>, 118 So. 2d 423, 426 (La. 1960) ("There is nothing in the language of the Article [dealing with suspensive conditions] which lends support to the contention that, when the suspensive conditions are performed, title to the property contracted for vests retrospectively in the grantee to the date the engagement was contracted.") and <u>Ober v. Williams</u>, 35 So. 2d 219, 223 (La. 1948) (holding that article 1775 does not have the effect of vesting title retrospectively to the date of the agreement).

In his post-argument brief, Syracuse ignores the cases referenced by the Court in its Opinion and the effect of article 1775, while continuing to assert that article 1772 controls. Even the comments to article 1772, however, acknowledge that title may not pass retroactively: "the party not at fault may have to content himself with damages rather than specific performance if the latter has become impossible because of the

nonfulfillment of the condition." La. Civ. Code art. 1772, cmt. c. That is exactly what the Court determined in its Opinion; Syracuse has at most a claim for damages for breach of contract. 341 B.R. at 476.

> e. <u>Wrong Third Party</u>

In his post-argument brief, Syracuse argues that the Court, in its Opinion, determined that the third party whose rights prevented the retroactive fulfillment of the suspensive condition was Valero. This is erroneous, Syracuse contends, because the parties stipulated that the sale to Valero would not affect their respective claims of title to the Surplus Materials and that their interests would attach to the proceeds of the sale of that property. He asserts that the Court changed its ruling and suggested, for the first time at the oral argument, that the third party was the Debtor's estate.

Syracuse's premise is erroneous. The Court determined in its Opinion that the third party that cut off Syracuse's rights was the Debtor's bankruptcy estate. <u>Id.</u> at 476. The Court concluded that the Debtor's bankruptcy estate acquired property rights in the Surplus Materials pursuant to section 541(a)(1) of the Bankruptcy Code as of the commencement of the case thereby preventing any retroactive fulfillment of the suspensive condition. <u>Id.</u> ("When the Debtor filed its bankruptcy case, the estate obtained an interest in the surplus materials. This

-13-

occurred before the suspensive condition could be regarded as
fulfilled.").

f.  Improvement of Position

In his post-argument brief, Syracuse also argues that the
Debtor's bankruptcy estate cannot receive any better title in the
Surplus Materials than the Debtor had and that, because the
suspensive condition was deemed fulfilled as to the Debtor, it
must be as to the estate as well.  To hold otherwise, argues
Syracuse, would allow the Debtor to improve its position simply
because it filed bankruptcy.  See, e.g., In re Squyres, 172 B.R.
592, 594 (Bankr. C.D. Ill. 1994) ("[The debtor's interests in an
asset or his rights against others are not expanded by the filing
of a bankruptcy proceeding.").

The Court disagrees.  The filing of a petition in bankruptcy
creates a new legal entity, the bankruptcy estate.  The estate
succeeds to the debtor's rights in most respects but possesses
property rights and legal attributes in addition to those of the
pre-petition debtor.  For example, property of the estate
includes recoveries for transfers avoidable under chapter 5 of
the Bankruptcy Code.  11 U.S.C. §§ 541(a)(7), 544, 547, 548 &
549.  In particular, the estate has the power to avoid interests
of third parties in property of the debtor that were unperfected
as of the petition date.  Id. at § 544.  Any improvement in
position that the estate may have over the position of the debtor

-14-

absent a bankruptcy filing does not inure to the benefit of the debtor; it is for the benefit of creditors.  The creation of a bankruptcy estate is to fulfill the purposes of the Bankruptcy Code, which  "aims, in the main, to secure equal distribution among creditors."  Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 126 S. Ct. 2105, 2109 (2006).

Because in this case the bankruptcy estate came into existence and obtained title to the Surplus Materials before Syracuse's rights were adjudicated, Syracuse cannot obtain title to the Surplus Materials under Louisiana law.  Once a person[6] obtains an interest in property, Louisiana law protects that person's rights against the retroactive effects of the fulfillment of a suspensive condition.  La. Civ. Code art. 1775, cmt. (b) (stating that article 1775 protects "the rights of third persons against retroactive effects of the fulfillment of a condition.").

Section 541(d) of the Bankruptcy Code does make property of the estate subject to a constructive trust claim.  This is of no

---

[6]  Under Louisiana law, "[t]he right of ownership may exist only in favor of a natural person or a juridical entity."  La. Civ. Code art. 479.  The Debtor's estate is a legal entity that can hold property, and the trustee (or debtor in possession) is its representative and has the capacity to sue and be sued on behalf of the estate.  11 U.S.C. §§ 101(15), 323 & 1107(a). Thus, the bankruptcy estate has attributes of a personality and is, therefore, a juridical person under Louisiana law.  La. Civ. Code art. 24 (defining a "juridical person" as an entity to which the law attributes personality . . . .").

help to Syracuse, however, because constructive trust claims are not recognized under Louisiana law. See, e.g., Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management), 4 F.3d 1329, 1336 (5th Cir. 1993).

Consequently, there is no provision in the Bankruptcy Code or Louisiana law that establishes Syracuse's rights in the Surplus Materials are superior to the title acquired by the Debtor's estate on the filing of the petition. See Rine & Rine Auctioneers v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 854, 858 (8th Cir. 1996) (providing that state law controls questions concerning the nature and extent of a debtor's interest in property, but federal bankruptcy law determines the extent to which that interest is property of the estate).

Thus, while Syracuse may have been able to use article 1772 to obtain title to the Surplus Materials in the absence of the Debtor's bankruptcy filing, once the Surplus Materials became property of the estate, Syracuse lost his right to obtain title to those items. Syracuse merely has a "claim" against the Debtor's estate. See 11 U.S.C. § 101(5) (defining a "claim" to be a "(A) right to payment . . . or (B) right to an equitable remedy for breach of performance . . . .").

g.  <u>Waiver</u>

Syracuse also argues that the contract cannot be classified as a sale subject to a suspensive condition because Syracuse sold some of the Surplus Materials without ever moving them before the Debtor filed bankruptcy, even selling some of the Surplus Materials back to the Debtor.  These actions, Syracuse contends, demonstrate that title to certain items passed before removal and clean-up services required by the Agreement could be performed.

In its Opinion, the Court stated that "[r]emoval of the surplus materials could not be accomplished unless Syracuse was also concomitantly cleaning up the designated areas.  Without the satisfaction of the suspensive condition – the clean up of the designated areas – title to the Surplus Materials could not have passed from him to the Debtor."  341 B.R. at 475.  The fact that the Debtor may have agreed that Syracuse did not have to remove some of the Surplus Materials that it purchased from him does not invalidate the Court's classification of the Agreement as a sale subject to a suspensive condition.

Syracuse argues, however, that if the Debtor waived the requirement that Syracuse remove some items from the Norco facility, it was a waiver of the suspensive condition itself. The Defendant responds in its post-argument brief that the parties' contract expressly provides that "[a] waiver . . . of any term, provision, or condition of this contract shall not

constitute a precedent or bind either party hereto to a waiver of any succeeding breach of the same or any other terms, provision, or condition of this contract." (Contract, Exh. A, Item 18.) Consequently, the Court concludes that, if the Debtor did waive the suspensive condition as to some of the sales, it did not constitute a waiver of the suspensive condition as to all sales.

IV. <u>CONCLUSION</u>

For the above-stated reasons, the Court will deny Syracuse's motion for reconsideration.

An appropriate order is attached.

By the Court,

Dated: August 8, 2006

Mary F. Walrath
United States Bankruptcy Judge

-18-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ORION REFINING CORP., | ) | Case Nos. 03-11483 (MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MICHAEL G. SYRACUSE d/b/a | ) | |
| INTERSTATE SUPPLY CO., and | ) | |
| TEXAS ICO, INC., | ) | |
| | ) | Adv. Proc. No. 03-53939 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORION REFINING CORP. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER

AND NOW, this **17th** day of **APRIL, 2006,** upon consideration of the Motion for Partial Summary Judgment filed by Michael G. Syracuse and the Motion for Partial Summary Judgment filed by Orion Refining Corporation, and all responses thereto, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment filed by Michael G. Syracuse is **DENIED;** it is further

**ORDERED** that the Motion For Partial Summary Judgment filed by Orion Refining Corporation is **GRANTED;** and it is further

**ORDERED** that Count I of the adversary complaint filed by Michael G. Syracuse is **DISMISSED;** and it is further

**ORDERED** that the proceeds of sale held in escrow shall be released to the Debtor.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Chris Winter, Esquire[1]

---

[1] Counsel shall distribute a copy of this Order to all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

Chris Winter, Esquire
Duane Morris LLP
1100 N. Market Street
Wilmington, DE 19801-1246
Counsel for Michael Syracuse

Andrew C. Wilson, Esquire
Burke & Mayer
20th Floor Energy Center
100 Poydras Street
New Orleans, LA 70163
Counsel for Michael Syracuse

Edward S. Rapier, Jr.,
2160 Eighth Street, Suite A
Mandeville, LA 70471
Counsel for Michael Syracuse

Thomas W. Briggs, Esquire
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801
Counsel for Cypress Associates, LLC,
ORC Distribution Trust Representative

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| ORION REFINING CORP., | Case Nos. 03-11483 (MFW) |
| Debtor. | |
| MICHAEL G. SYRACUSE d/b/a INTERSTATE SUPPLY CO., and TEXAS ICO, INC., | |
| Plaintiffs, | Adv. Proc. No. 03-53939 |
| v. | |
| ORION REFINING CORP. | |
| Defendant. | |

## MEMORANDUM OPINION[1]

Before the Court is the motion for partial summary judgment filed by Michael G. Syracuse ("Syracuse") seeking a determination that he has title to certain surplus materials located at the former facility of Orion Refining Corporation (the "Debtor") in Norco, Louisiana.  The Debtor filed a cross-motion for partial summary judgment asserting that title to the surplus materials passed to the purchaser of its Norco facility, Valero Energy Corporation and Valero Refining-New Orleans, LLC (collectively "Valero").  For the reasons stated herein, the Court will deny Syracuse's motion and grant the Debtor's motion.

---

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

I. <u>BACKGROUND</u>

The Debtor operated a crude oil refinery in Norco, Louisiana.  On April 24, 2001, Syracuse and the Debtor entered into an agreement ("the Agreement") whereby Syracuse agreed to clean designated areas and remove surplus materials from the Norco facility.  The Agreement is governed by Louisiana law. Section II of the Agreement, entitled "Scope of Work" provides:

> A. Contractor shall furnish all . . . personnel to remove surplus material as identified by Orion . . . and clean all designated areas . . . .  Completion of areas is defined as: graded and able to cut grass without obstruction. . . .  Work or services rendered or performed by Contractor shall be done with due diligence . . . .

(Compl., Ex. A).

In addition to providing clean-up services, Syracuse was purchasing surplus materials located in the designated areas.  In fact, the Debtor was not obligated to pay Syracuse any money for his services; instead, Syracuse paid the Debtor $100,000. Section VII of the Agreement, entitled "Special Conditions," provides:

> WARRANTY AND WARRANTY DISCLAIMER-FOR CONTRACTOR USE ONLY
> Seller warrants only that [it] has good title to the "used" and "as is" surplus material sold hereunder. Buyer understands and agrees that Seller is selling hereunder "used" and "as is" surplus material. . . .

(<u>Id.</u>).

Pursuant to the Agreement, Syracuse removed some surplus materials from the Norco facility which it resold.  Under the

Agreement, Syracuse had until March 31, 2002, to complete his performance, which was not done.  Syracuse blames his failure to meet the deadline on the Debtor's interference with his performance.  Syracuse contends that, pursuant to the Agreement with the Debtor, he obtained title to $1,591,000 worth of surplus materials that were still located at the Debtor's facility when it filed its bankruptcy case on March 13, 2003.

Shortly after the bankruptcy filing, the Debtor sold all the assets of the Norco facility to Valero.  Syracuse objected to the sale to the extent that it included the surplus material that he claimed he owned.  The parties agreed to allow the sale to proceed, subject to the Debtor placing $1.5 million of the sale proceeds in escrow pending a determination of title to the surplus materials.

Briefing on the parties' motions for partial summary judgement is complete and they are ripe for decision.


II.   <u>JURISDICTION</u>

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (N), & (O).


III. <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

Summary judgment is appropriate when the matters presented

-3-

to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. A fact is not "genuinely disputed" unless the factual

conflict between the parties requires a trial of the case for
resolution.  Finley v. Giacobbe, 79 F.3d 1285, 1291 (2d Cir.
1996) ("If there is any evidence in the record from which a jury
could draw a reasonable inference in favor of the non-moving
party on a material fact, this Court will find summary judgment
is improper.").

    B.   Title

    Syracuse argues that the Agreement was a contract of sale.
Consequently, he asserts that title to the surplus materials
passed to him at the time of execution.  As a result, he contends
that the items were not property of the Debtor's bankruptcy
estate and could not be sold to Valero.

    The Debtor argues that the Agreement was for services.
Consequently, the Debtor contends that it retained title to
surplus materials that were not timely removed by Syracuse.

    "The means for distinguishing between contracts of sale and
construction agreements have been disputed and have never been
very clear."  Bruce V. Schewe, Obligations, 46 La. L. Rev. 595,
609 (1986).  In this case, however, it is not necessary to
classify the Agreement between the Debtor and Syracuse as one for
services or one of sale, because even if classified as a contract
of sale, it was a contract subject to a suspensive condition that
– until fulfilled - prevented title to the surplus materials from
passing to Syracuse.

Under the Louisiana law of sales, title to an object normally passes to the purchaser when the parties reach an agreement as to the thing and the price, even though no delivery has occurred. La. Civ. Code art. 2456 ("Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid."). Numerous exceptions to this general rule exist, one of which is a sale subject to a suspensive condition. See Robert L. Theroit, An Examination of the Role of Delivery in the Transfer of Ownership and Risk in Sales under Louisiana Law, 60 Tul. L. Rev. 1035, 1037 (1986) (explaining exceptions to Civil Code article 2456). The Civil Code defines a "suspensive condition" as a conditional obligation that "may not be enforced until the uncertain event occurs." La. Civ. Code art. 1767.

When a contract of sale also requires the performance of a service, the performance of that service is a suspensive condition that is required to be fulfilled before title can pass under the contract of sale. See, e.g., Jefferson Parish School Bd. v. Rowley Co., 350 So. 2d 187, 192-93 (La. App. 4th Cir. 1977) (holding that even though the purchaser took delivery and paid for cabinets which were later destroyed by fire, title did not pass on the date of the contract, payment, or delivery because the contract also required the installation of those

-6-

cabinets, which was an unfulfilled suspensive condition at the time they were destroyed).

In this case, Syracuse states that he paid the Debtor $100,000 to purchase the surplus materials in the designated areas of the Debtor's former Norco facility.  The Agreement, however, also required him to remove the materials and clean those areas.  The fact that Syracuse claims the value of the remaining items at the Norco facility is $1,591,000 is evidence of the value the Debtor placed on his clean-up services.

The Court concludes that Syracuse's performance of his clean-up services was a suspensive condition to his obtaining title to the surplus materials in the designated areas.  <u>Rowley Co.</u>, 350 So. 2d at 192-93.  Until Syracuse removed an item from a designated area and cleaned that area, title to that item did not pass from the Debtor to Syracuse.  Consequently, the Court finds that title to the items remaining at the Debtor's facility had not passed to Syracuse at the time of the Debtor's bankruptcy filing.

Syracuse argues that the clean-up services he was to preform could not be a suspensive condition to the sale because "the services of cleaning up <u>after</u> the Surplus Materials were removed could only be performed <u>after</u> the Surplus Materials were removed."  (Emphasis in original).

-7-

The Court does not agree.  Removal of the surplus materials could not be accomplished unless Syracuse was also concomitantly cleaning up the designated areas.  Without the satisfaction of the suspensive condition – the clean up of the designated areas – title to the Surplus Materials could not have passed to him from the Debtor.

C.   <u>Seller's Fault</u>

Syracuse argues that, even if the Agreement is deemed to be a sale subject to a suspensive condition, the Debtor is to blame for his failure to satisfy the condition because the Debtor interfered with his performance.  In support, Syracuse submitted several deposition transcripts describing the restrictions placed on Syracuse in working in certain areas and the affidavit of the Debtor's former security manager, who stated that Syracuse's crew was "called off areas where they were performing work and redirected to other areas."

The Debtor contests Syracuse's allegation that it interfered with his performance and argues that the Agreement gave the Debtor the right to restrict his access to certain areas.  In support, the Debtor submitted the deposition of an employee of the Debtor who testified that he gave Syracuse "the opportunity to cherry pick based on . . . areas[, but] he was not able to give [Syracuse] just free range of the plant."

-8-

Based on the exhibits attached to the motions for summary judgment, the Court concludes that a genuine issue of fact exists over whether the Debtor interfered with Syracuse's performance of the Agreement.

That factual issue, however, is not material to the legal issue before the Court. Even assuming that the Debtor was to blame for Syracuse's nonfulfillment of the suspensive condition, Syracuse cannot establish his title to the surplus materials over the interests of Valero.

It is true that Louisiana law provides that, if a party is unable to perform a suspensive condition because the other party interfered, the condition will be deemed fulfilled. La. Civ. Code art. 1772 ("A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment."). Further, the condition will be deemed fulfilled retroactively to the date of the agreement. Id. at art. 1775 (the effect is "retroactive to the inception of the obligation.").

There is an exception, however: "fulfillment of the condition does not impair the right acquired by third persons while the condition was pending." Id. at art. 1775. See also id. at art. 1772, cmt. (c) (explaining that even when a suspensive condition is regarded as fulfilled, "the party not at fault may have to content himself with damages rather than

-9-

specific performance if the latter has become impossible because of the nonfulfillment of the condition."); id. at art. 1775, cmt. (b) (stating that article 1775 protects "the rights of third persons against retroactive effects of the fulfillment of a condition.").

The Louisiana Supreme Court has explained that:

> [A] conditional contract is retrospective in its operation as a binding executory contract as of the date it was made and, when the conditions on which the contract is dependent are fulfilled, either party thereto has the right to demand its performance. There is nothing in the language of the Article which lends support to the contention that, when the suspensive conditions are performed, title to the property contracted for vests retrospectively in the grantee to the date the engagement was contracted.

Wampler v. Wampler, 118 So. 2d 423, 426 (La. 1960). See also Ober v. Williams, 35 So. 2d 219, 223 (La. 1948) (explaining that article 1775 does not have the effect of vesting title retrospectively to the date of the agreement; rather, it merely means that "the rights of the obligor, upon compliance, revert to the date of the contract . . . it offers no foundation for an argument that . . . the ownership is transferred retrospectively by the performance of the condition.").

Consequently, the Court concludes that under Louisiana law, even if the suspensive condition is regarded as fulfilled because of the Debtor's interference with the performance of the Agreement, Syracuse's title would not revert back to the inception of the Agreement and the rights of intervening parties

-10-

would be protected.  La. Civ. Code art 1775 ("[F]ulfillment of
the condition does not impair the right acquired by third persons
while the condition was pending."). <u>See also</u> <u>Orion Ref. Corp. v.
Dep't of Revenue (In re Orion Ref. Corp.)</u>, No. 03-11483, 2005 WL
994575 at *3 (Bankr. M.D. La. April 27, 2005) (holding that the
transfer of tax credits by TARC to Orion was effective
notwithstanding a prior letter agreement assigning those tax
credits to the Louisiana Department of Revenue because the letter
agreement had two suspensive conditions that were not fulfilled
at the time TARC transferred the tax credits to Orion); <u>Energy
Development Corp. v. St. Martin</u>, 128 F. Supp. 2d 368, 381 (E.D.
La. 2000) (holding that a conditional future obligation does not
burden property such that it is to be taken out of commerce and
the condition does not deny rights acquired by third parties
while the condition is pending), <u>aff'd</u>, 296 F.3d 356 (5th Cir.
2002).

When the Debtor filed its bankruptcy case, the estate
obtained an interest in the surplus materials.  <u>See</u> 11 U.S.C. §
541(a)(1).  This occurred before the suspensive condition could
be regarded as fulfilled.  Also, the Debtor sold its interest in
the surplus materials to Valero before the suspensive condition
was fulfilled.  Therefore, the Court concludes that Syracuse
cannot now establish title to the surplus materials, but is
relegated to an action for damages only.

IV. <u>CONCLUSION</u>

The Court will deny Syracuse's motion for partial summary judgment and grant the Debtor's motion for partial summary judgment on the issue of title. The Court will, therefore, dismiss Count I of Syracuse's adversary complaint, which seeks a declaratory judgment recognizing his right, title, and interest in the surplus materials. In addition, the Court will order the release of the sale proceeds from escrow to the Debtor.

An appropriate order is attached.

By the Court,

Dated: April 17, 2006

Mary F. Walrath
United States Bankruptcy Judge

-12-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Case Number:  03-53939_____     ◌ BK     ● AP

  If AP, related BK Case Number:  03-11483_____

0 6 - 5 3 6

Title of Order Appealed:
Order Denying Motion for Reconsideration_____

Docket Number:  109_____     Date Entered:  8/8/06_____

Item Transmitted:     ● Notice of Appeal          ◌ Motion for Leave to Appeal
                     ◌ Amended Notice of Appeal   ◌ Cross Appeal
                     Docket Number:  112_____     Date Filed:  8/17/06_____

*Appellant/Cross Appellant:                *Appellee/Cross Appellee
Michael G. Syracuse dba Interstate Sup.    Orion Refining Corp.                    ▫

Counsel for Appellant:                     Counsel for Appellee:
  Michael R. Lastowski            ▫        Richard D. Allen
  Christopher M. Winter           ▫        Gregory Werkheiser
  Duane Morris LLP                ▫        Thomas W. Briggs, Jr.
  1100 N. Market Street, Suite 1200 ▫      Morris Nichols Arsht & Tunnell
  Wilmington, DE 19801-1246                1201 N. Market Street              ▫

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?     ● Yes   ◌ No

IFP Motion Filed by Appellant?   ◌ Yes   ● No

Have Additional Appeals to the Same Order been Filed? ◌ Yes  ● No
  If so, has District Court assigned a Civil Action Number?   ◌Yes ◌No  Civil Action # _____

Additional Notes:
Appellees Designations not filed._____

  8/31/06_____          By:  Barbara M. Torres_____
Date                                    Deputy Clerk

Bankruptcy Court Appeal (BAP) Number:  BAP-06-51
7/6/06